UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| COVINGTON SPECIALTY INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>SWEET SOUL, INC.,<br>SWEET SOUL BISTRO 2, INC.,<br>SWEET SOULSEAFOOD, LLC,<br>VICTORIOUS LLC,<br>PLATINUM LOUNGE, INC.,<br>TOYAGREEN, LLC,<br>TOYA GREEN, and<br>MICKEY ANDERSON as personal representative of the estate of RONALD CAMERON ANDERSON,<br><br>    Defendants. | Case No. 22-11688<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS [28]**

Ronald Cameron Anderson was shot and killed while standing outside of Sweet Soul Bistro in Detroit. (ECF No. 1-1, PageID.23.) In time, Anderson's Estate sued Sweet Soul, its owner, Toya Green, and several related entities in Michigan state court for wrongful death. (*See generally* ECF No. 1-1 (*Anderson* complaint).) The Estate alleges that the Sweet Soul Defendants failed to exercise reasonable care to prevent foreseeable criminal activity on the property, which lead to Anderson's death. (*Id.*) That case is ongoing.

Meanwhile, Covington Specialty Insurance Company insured at least two of the Sweet Soul entities at the time of the shooting. (ECF No. 1-2 (policy).) So the insureds asked Covington to defend and indemnify them in *Anderson*. (*See* ECF No. 1, PageID.17.) But Covington believes that an assault-and-battery exclusion in its policy "precludes coverage for the shooting death of Ronald Cameron Anderson and all claims asserted against the Sweet Soul Defendants." (ECF No. 1, PageID.15.) So Covington filed this declaratory-judgment action and asked the Court to declare that Covington has no duty to defend or indemnify any Sweet Soul entity in that case. (*See generally* ECF No. 1.)

Covington has now moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). (ECF Nos. 28, 31.) The motion is fully briefed. (*See* ECF Nos. 37 (the Estate's response), 38 (Sweet Soul Defendants' response), 39 (Covington's reply).) Given the clear briefing and record, and the parties' oral request for expedited consideration, the Court considers the motion without further argument. *See* E.D. Mich. LR 7.1(f).

Because the Court concludes that the assault-and-battery exclusion clearly and unambiguously precludes coverage in *Anderson*, it will grant Covington the relief it seeks.[1]

---

[1] Count I of the complaint seeks a declaration that only Toya Green and Sweet Soul, Inc. are insured under the policy. (ECF No. 1, PageID.12–14.) But Covington's motion for judgment on the pleadings makes clear that the Court should only consider this claim if it finds that the assault-and-battery exclusion does not preclude coverage. (ECF No. 31, PageID.278.) And, in any event, Defendants make no arguments in opposition to this claim.

I.

Federal Rule of Civil Procedure 12(c) provides that, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." In deciding Rule 12(c) motions, courts use the standard governing Rule 12(b)(6) motions. *See Heinrich v. Waiting Angels Adoption Srvs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012). As such, "this Court construes the complaint in the light most favorable to the plaintiff, accepts the plaintiff's factual allegations as true, and determines whether the complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Where, as here, the motion is filed by the plaintiff, the court should grant the motion if, 'on the undenied facts alleged in the complaint and assuming as true all the material allegations of fact in the answer, the plaintiff is entitled to judgment as a matter of law.'" *Outdoor One Commc'ns, LLC v. Charter Twp. of Genoa*, No. 20-CV-12459, 2022 U.S. Dist. LEXIS 240028, at *5 (E.D. Mich. Sept. 29, 2022) (citation omitted).

II.

The parties agree that Michigan law governs the interpretation of the insurance policy at issue in this case. (*See* ECF Nos. 31, 37, 38.) But they dispute whether the policy requires Covington to defend and indemnify its insureds in *Anderson*.

"The [duty to defend] requires insurers to pay for the insured's legal counsel and litigation costs when the policy arguably covers the alleged liability; the [duty to

indemnify] requires them to pay the injured party any damages awarded against the insured for the covered loss." *Safety Specialty Ins. Co. v. Genesee Cnty. Bd. of Commissioners*, 53 F.4th 1014, 1021 (6th Cir. 2022) (citing *Farmers & Merchants Mut. Fire Ins. Co. v. Lemire*, 434 N.W.2d 253, 255 (Mich. Ct. App. 1988)). "The duty to indemnify arises only with respect to insurance afforded by the policy, whereas the duty to defend arises if a third party's allegations against the insured arguably come within policy coverage." *City of Warren v. Int'l Ins. Co. of Hannover*, 524 F. App'x 254, 258 (6th Cir. 2013) (citing *Am. Bumper & Mfg. Co. v. Hartford Fire Ins. Co.*, 552 N.W.2d 475, 481 (Mich. 1996)). If, based on the underlying complaint, "the policy does not apply, there is no duty to defend." *Am. Bumper*, 552 N.W.2d at 481. And if there is no duty to defend, there is no duty to indemnify. *See id.*; *see also Cone v. Northfield Ins. Co.*, No. 13-CV-15096, 2015 WL 668118, at *6 (E.D. Mich. Feb. 17, 2015) ("[C]ourts applying Michigan law have found that if a duty to defend does not exist, a duty to indemnify will not arise either.").

Within this framework, Michigan courts treat an insurance policy like any other contract. *Stryker Corp. v. XL Ins. Am.*, 735 F.3d 349, 354 (6th Cir. 2012). "The relevant contract interpretation principles are simple enough—courts should enforce contract language in accordance with its plain and commonly used meaning, being careful to enforce specific and well-recognized terms." *Henderson v. State Farm*, 596 N.W.2d 190, 193–94 (Mich. 1999); *see also Stryker*, 735 F.3d at 354. If a term is defined by the policy, then the definition controls as long as it is unambiguous. *Henderson*, 596 N.W.2d at 193. And while insurance contracts are construed in favor

4

of the insured if ambiguity is found, "this does not mean that the plain meaning of a word or phrase should be perverted, or that a word or phrase, the meaning of which is specific and well recognized, should be given some alien construction merely for the purpose of benefitting an insured." *Id.* at 194. The proper interpretation of a contract is a question of law, as is the question of whether contract language is ambiguous. *Wilkie v. Auto–Owners Ins. Co.*, 664 N.W.2d 776, 780 (Mich. 2003).

## A.

Start with Covington's duty to defend, which arises if the allegations in Anderson's complaint "arguably come within the policy coverage." *See Am. Bumper*, 552 N.W.2d at 481. Here, the assault-and-battery exclusion precludes coverage for "[a]ny claim or 'suit' to recover damages for 'bodily injury' . . . arising from actual or alleged . . . 'battery[.]'" (ECF No. 1-2, PageID.65.) It continues: "We are under no duty to defend or indemnify an insured regardless of the degree of culpability or intent and without regard to" a number of scenarios, including the insured's failure to hire, train, or supervise its employees or its failure to prevent or bar such conduct. (*Id.* at PageID.65.) And it bars coverage for "[a]ny other cause of action or claim arising out of or as a result of" those limitations. (*Id.*) The exclusion flatly states that there will be "no coverage or duty to defend . . . if the underlying operative facts constitute . . . [a] 'battery' irrespective of whether the claim alleges failure to provide adequate security in any way." (*Id.* at PageID.66.) In addition, the policy defines "battery" as "the harmful or offensive contact between or among two or more persons and includes, but is not limited to, contact of a physical or sexual

5

nature. 'Battery' includes harm arising out of the distribution, demonstration, accidental discharge, gunsmithing, ownership, maintenance or use of firearms or 'weapons'." (*Id.*)

Given this exclusion, *Anderson* does not arguably come within the policy coverage. The *Anderson* complaint, which the Estate admits, says that the "present action arises out" of the "foreseeable and preventable shooting" of Ronald Cameron Anderson. (ECF No. 1-1, PageID.22–23; ECF No. 14, PageID.155–156.) It alleges that Sweet Soul breached its "dut[ies] of reasonable care" to "hire competent employees," "have adequate policies, procedures, and rules for employees," and "train, manage, and instruct employees," among others. (ECF No. 1-1, PageID.23–24.) Indeed, the complaint lists 10 different ways that Sweet Soul failed to provide adequate security to its patrons. (*Id.*) Finally, it alleges that "Sweet Soul breached one or more of its duties resulting in injuries, and ultimately death" to Anderson. (*Id.*)

This is not a close call. *Anderson* is clearly a suit to recover damages for bodily injury arising from a battery—i.e., the harmful contact between Anderson and the shooter arising from the use of a firearm. And it asserts theories of liability—like Sweet Soul's alleged failure to train its employees—that are explicitly barred by the exclusion. So Covington has no duty to defend its insureds in *Anderson*.

This interpretation breaks no new ground, as "numerous Michigan courts have upheld as unambiguous, valid, and enforceable exclusions to coverage for injuries and damages associated with an assault or battery, such that the insurer is entitled to deny coverage under an insurance policy." *Gunn v. Gen. Star Indem. Co.*, No. 21-

6

11777, 2022 WL 4542079, at *5 (E.D. Mich. Sept. 28, 2022) (collecting cases). Indeed, a nearly identical assault-and-battery exclusion in one of Covington's policies was recently enforced in this district. *See Covington Specialty Ins. Co. v. Rodney's Loft, Inc.*, No. 21-11541, 2022 WL 1184326, at *3 (E.D. Mich. Apr. 21, 2022) ("The policy explicitly excludes coverage for suits arising from battery, which is defined to include 'harm' arising out of 'use of firearms.' . . . There is no question of material fact as to the allegation in the pleadings that [the decedent's] death resulted from harm arising from [the shooter's] use of a firearm. This exclusion provides a 'clear and unambiguous' bar to coverage for all of [the Estate's] claims.").

**B.**

In contrast to this straightforward and well-supported interpretation of the assault-and-battery exclusion, Defendants[2] argue for a strained and somewhat puzzling interpretation of "battery" that does not encompass the intentional use of a single firearm at issue in *Anderson*.

Recall that the policy defines battery as "the harmful or offensive contact between or among two or more persons and includes, but is not limited to, contact of a physical or sexual nature. 'Battery' includes harm arising out of the distribution, demonstration, accidental discharge, gunsmithing, ownership, maintenance or use of firearms or 'weapons'." (ECF No. 1-2, PageID.66.) This definition conforms to the usual meaning of the word. *See, e.g.*, Mich. Civ. Jury Instruction 115.02 ("A battery

---

[2] Though the Defendants filed separate responses, they are virtually identical. (*See* ECF Nos. 37 (Estate's response), 38 (Sweet Soul Defendants' response).) For ease of reference, the Court will only cite to the Estate's response.

7

is the willful or intentional touching of a person against that person's will [by another / by an object or substance put in motion by another person]."); BATTERY, Black's Law Dictionary (11th ed. 2019) ("A nonconsensual, intentional, and offensive touching of another without lawful justification[.]").

Defendants' argument that Anderson's shooting was not a "battery" proceeds as follows: First, they argue that this is not one definition broken into two sentences; instead, it is "two competing definitions[.]" (ECF No. 37, PageID.348.) The first definition, say Defendants, does not apply because "harmful or offensive contact" applies only to "direct" contact between persons, such as "sexual abuse or hand-to-hand combat." (*Id.*) And the second definition does not apply because neither "accidental discharge" nor "use of firearms" encompasses the "*intentional* discharge of *a* [single] *firearm*." (*Id.* (emphases in original).) So, according to Defendants, Anderson's shooting was not a "battery" as defined by the policy.

This interpretation of "battery" is unpersuasive.

For starters, Defendants do not explain why the two-sentence definition of battery should be interpreted as two "competing" definitions. There appears to be nothing in the structure or text of the definition to support such a reading. Instead, as Covington points out, the two sentences are most naturally read together—the first as a general definition and the second as a non-exhaustive list of examples that could satisfy the general definition. (*See* ECF No. 39, PageID.376.) For example, when read together, the "use of firearms" becomes a "battery" only when it creates a harmful or offensive contact between the shooter and the victim. But, read in

8

isolation, the use of firearms to harm a building, a car, or an animal might also be a battery, which would be strange given the usual meaning of the word. *See, e.g.*, Mich. Civ. Jury Instruction 115.02 ("A battery is "the willful or intentional *touching of a person* against that person's will by an object . . . put in motion *by another person*." (emphases added)).

Along similar lines, there is no reason to read "harmful or offensive contact" in the first sentence as limited to "direct" contact like "sexual abuse and hand-to-hand combat," as Defendants urge. The word "direct" is found nowhere in the definition. And "battery" is not generally understood to require direct contact. *See* Mich. Civ. Jury Instruction 115.02 (noting that "battery" includes the intentional touching of a person "by an object . . . put in motion by another person"); *Kersh v. Turner*, No. 14-14478, 2015 WL 4509357, at *4 (E.D. Mich. July 24, 2015) ("Defendant is also liable for battery because he . . . caused a 'harmful touching' of Plaintiff by shooting his gun at and actually striking Plaintiff."). Indeed, the Supreme Court has explained that the force used in a common-law battery "need not be applied directly to the body of the victim" and could be accomplished by poisoning, infecting, or shining a laser beam at the victim. *See United States v. Castleman*, 572 U.S. 157, 170 (2014). So without further explanation, there appears to be no support for Defendants' contention that "harmful or offensive contact" means only direct physical contact between individuals. And without such limitation, a shooting appears to fit the bill as a "harmful or offensive contact between . . . two . . . persons."

9

That leaves one final—but complicated—argument. After reading the second sentence in isolation, Defendants argue that "harm arising out of the . . . accidental discharge . . . or use of firearms" does not include the intentional discharge of a single firearm at issue in *Anderson*. (ECF No. 37, PageID.348.) Specifically, they argue that "the express specific reference to 'accidental discharge' removes 'intentional discharge' of firearms" from the scope of the exclusion. (*Id.* at PageID.349.) And they say that "reference to 'firearms' but not 'a firearm' . . . necessarily limits the definition of . . . 'Battery' to incidents involving more than one firearm." (*Id.* at PageID.349–350.)

This argument fails, too.

For starters, the Court is not convinced that a specific reference to an "accidental discharge" precludes an intentional discharge. The main problem is that this reading requires the second sentence's use of "includes" to create an exhaustive list. True, only the prior sentence uses the broader language "includes but is not limited to[.]" But "include," even on its own, "typically indicates a partial list." *See* INCLUDE, Black's Law Dictionary (11th ed. 2019); *see also In re Vill. Apothecary, Inc.*, 45 F.4th 940, 947 (6th Cir. 2022) ("Although context matters, most courts read the word 'include' to introduce a nonexhaustive list.") (collecting sources). And, as explained, in the context of the definition as a whole, it is clear that the second sentence is meant to list non-exhaustive examples of acts that could amount to a battery. So the Court disagrees that the inclusion of "accidental discharge" removes intentional discharges from the definition of battery.

In any case, the inclusion of the phrase "use of firearms" includes intentional discharges and is far more capacious than the accidental/intentional distinction that Defendants home in on. And perhaps Covington had good reason to avoid that distinction, as Michigan law reflects the remarkably diverse ways an individual can use (and misuse) a firearm. *See* Mich. Comp. Laws §§ 750.234–235, 752.861–863 (imposing penalties for the use of a firearm in careless, reckless, negligent, willful, wanton, or intentional manner).

Finally, "use of firearms" does not exclude incidents involving the use of a single firearm. Indeed, the "number canon" directs that "the singular includes the plural (and vice versa)." *See* Kevin Tobia *et. al.*, *Statutory Interpretation from the Outside*, 122 Colum. L. Rev. 213, 252 (2022). Both Michigan law and federal law recognize the number canon. *See* Mich. Comp. Laws § 8.3b ("Every word importing the singular number only may extend to and embrace the plural number, and every word importing the plural number may be applied and limited to the singular number."); Mich. Comp. Laws § 750.10 (similar); 1 U.S.C. § 1 (similar). Common usage supports this interpretation, too. As one court noted when it rejected virtually the same argument about "firearms" in the insurance context, "no reasonable person seeing a sign stating, 'No Dogs Allowed' would interpret the prohibition to apply only to multiple dogs: a single dog would be no more welcome than a pack." *See Associated Indus. Ins. Co., Inc. v. Star Residential, LLC*, 2020 Ga. Super. LEXIS 3620, *9 (May 8, 2020). Moreover, though not directly presented with this argument, another court in this district implicitly held that the "use of firearms" in a like Covington exclusion

11

encompassed the use of a single firearm. *See Covington Specialty Ins. Co. v. Rodney's Loft, Inc.*, 2022 U.S. Dist. LEXIS 73198, at *1 (E.D. Mich. Apr. 21, 2022) (finding policy with similar definition of "battery" barred coverage for incident involving a single firearm). So the phrase "use of firearms" can include the use of a single firearm.

For these reasons, the Court finds that the policy's definition of "battery" is clear, unambiguous, and encompasses the harmful contact between Anderson and the shooter arising from the shooter's use of a firearm. And it declines Defendants' offer to give that word "some alien construction merely for the purpose of benefitting" them. *See Henderson v. State Farm*, 596 N.W.2d 190, 193–94 (Mich. 1999). Interpreting a garden-variety definition of "battery" in a broad insurance policy exclusion to include the accidental discharge of multiple firearms but to exclude the intentional use of a single firearm is just such a construction. As the Michigan Supreme Court has noted, "[a]dherence to a correct usage of the English language in insurance contract construction promotes a uniform, reliable, and reasonable foundation upon which policyholders and insurers alike may rely when they enter into a contractual agreement." *Allstate Ins. Co. v. Freeman*, 443 N.W.2d 734, 754 (Mich. 1989).

### III.

In sum, the assault-and-battery exclusion in the insurance policy clearly and unambiguously precludes coverage in suits to recover damages for bodily injury arising out of a battery. And the Estate's suit seeks to recover damages arising out of Anderson's battery. Accordingly, Covington has no duty to defend—and thus no duty

12

to indemnify—any of its insureds in *Anderson. See Am. Bumper & Mfg. Co. v. Hartford Fire Ins. Co.*, 552 N.W.2d 475, 481 (Mich. 1996).

For these reasons, Covington's motion for judgment on the pleadings (ECF Nos. 28, 31) is GRANTED. A separate judgment will follow.

SO ORDERED.

Dated: May 2, 2023

                                                s/Laurie J. Michelson
                                                LAURIE J. MICHELSON
                                                UNITED STATES DISTRICT JUDGE